**Electronically Filed
Supreme Court
SCWC-21-0000504
12-SEP-2025
08:13 AM
Dkt. 23 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellant,

vs.

BRIAN LEE SMITH,
Petitioner/Defendant-Appellee.

SCWC-21-0000504

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000504; CASE NO. 3CPC-18-0000543)

SEPTEMBER 12, 2025

RECKTENWALD, C.J., EDDINS, GINOZA, AND DEVENS, JJ.,
WITH McKENNA, J. CONCURRING AND DISSENTING

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

Defendant Brian Lee Smith was indicted for murder (Count 1) and attempted murder (Count 2) in connection with a shooting in Kona.  Both counts alleged that Smith was subject to a sentencing enhancement under Hawaiʻi Revised Statutes (HRS)

§ 706-660.1 (2014), based on his possession, use, or threat of use of a firearm while he was engaged in the commission of the offenses. However, the counts did not allege a state of mind applicable to the sentencing enhancement.

This case poses a single question of law: is a charging instrument that does not allege a state of mind for a sentencing enhancement under HRS § 706-660.1 defective?

We answer this question in the negative. First, we hold that the sentencing enhancement here was not an element of the underlying offenses such that a state of mind had to be alleged in the indictment. Additionally, we hold that due process is satisfied when a criminal defendant is notified that the sentence enhancement will be sought if that defendant is convicted of the underlying crime and the charging instrument contains sufficient allegations supporting its application.

## II.  BACKGROUND

On June 23, 2018, Petitioner/Defendant-Appellee Brian Lee Smith shot and killed Thomas Ballesteros, Jr., and shot and injured Nikolaus Slavik. Other than Smith, Slavik was the only eyewitness to the incident.

A grand jury indicted Smith on seven counts: Murder in the Second Degree, in violation of HRS § 707-701.5(1) (2014) (Count 1); Attempted Murder in the Second Degree, in violation of HRS §§ 705-500 (2014) and 707-701.5 (Count 2); Attempted

Murder in the First Degree, in violation of HRS §§ 705-500 and 707-701 (Supp. 2016) (Count 3); Ownership or Possession Prohibited (operable firearm), in violation of HRS § 134-7(b) and (h) (2011) (Count 4); Ownership or Possession Prohibited (ammunition), in violation of HRS § 134-7(b) and (h) (Count 5); Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21(a) (2011) (Count 6); and Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21(a) (Count 7).

Counts 1 and 2 both contained a sentencing enhancement under HRS § 706-660.1,[1] as follows:

---

[1]    HRS § 706-660.1, "Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony," provides in relevant part:

> (1)   A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:
>
> > (a)    For murder in the second degree and attempted murder in the second degree--up to fifteen years;
> >
> > (b)    For a class A felony--up to ten years;
> >
> > (c)    For a class B felony--up to five years; and
> >
> > (d)    For a class C felony--up to three years.

(continued . . .)

COUNT 1 (C18017673/KN)

On or about the 23rd day of June, 2018, in Kona, County and State of Hawaiʻi, BRIAN LEE SMITH intentionally or knowingly caused the death of another person, THOMAS BALLESTEROS, JR., thereby committing the offense of Murder in the Second Degree, in violation of Section 707-701.5(1), Hawaiʻi Revised Statutes, as amended.  It is further alleged that the Defendant is subject to sentencing in accordance with Section 706-660.1,[] Hawaiʻi Revised Statutes, where he had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the felony offense, whether the firearm was loaded or not, and whether operable or not.

COUNT 2 (C18017740/KN)

On or about the 23rd day of June, 2018, in Kona, County and State of Hawaiʻi, BRIAN LEE SMITH intentionally engaged in conduct, which, under the circumstances as he believed them to be, constituted a substantial step in the course of conduct intended to culminate in his commission of the crime of Murder in the Second Degree , [sic] said crime being intentionally or knowingly caused the death of another person, NIKOLAUS SLAVIK, thereby committing the offense of Attempted Murder in the Second Degree, in violation of Section 705-500 and 707-701.5, Hawaiʻi Revised Statutes, as amended.  It is further alleged that the Defendant is subject to sentencing in accordance with Section 706-660.1, Hawaiʻi Revised Statutes, where he had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the felony offense, whether the firearm was loaded or not, and whether operable or not.

(Emphasis added.)

At trial, Smith testified that he returned home from work to find Ballesteros and Slavik in the road near his house.

---

The sentence of imprisonment for a felony involving the use of a firearm as provided in this subsection shall not be subject to the procedure for determining minimum term of imprisonment prescribed under section 706-669; provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706-670 only upon the expiration of the term of mandatory imprisonment fixed under paragraph (a), (b), (c), or (d).

Ballesteros had allegedly broken into Smith's house the day before, looking for Ballesteros' girlfriend, who had been staying with Smith. Smith testified that he retrieved his "hunting backpack" from his shed, before confronting Ballesteros and Slavik, neither of whom were armed. The backpack contained a handgun and 67 rounds of ammunition. Smith also testified that he intentionally fired the handgun in self-defense, but that he did not intend for the bullet to hit, or kill, Ballesteros. Smith further testified that his hand was on the trigger of the gun during the struggle with Slavik when it discharged multiple times, shooting Slavik and himself.

The jury was given the following instruction regarding the sentencing enhancement for Count 1:

> If you find the defendant Guilty as to Murder in the Second Degree or Manslaughter (Extreme Mental or Emotional Disturbance), you shall answer the following interrogatory. Your decision must be unanimous.
>
> Has the prosecution proved beyond a reasonable doubt that the defendant <u>intentionally</u> used and/or threatened to use a firearm, whether the firearm was loaded or unloaded, operable or inoperable, while engaged in the commission of the offense of Murder in the Second Degree or Manslaughter (Extreme Mental or Emotional Disturbance)?

(Emphasis added.)

A substantially identical instruction was also read for Count 2.

The jury found Smith guilty of Counts 1, 4, 5, and 6, as well as the lesser included offense of Reckless Endangering in the First Degree, in violation of HRS § 707-713(1) (2014), on

Count 2.  It answered the interrogatories as to use or threatened use of a firearm in the affirmative for both Counts 1 and 2.  The circuit court sentenced Smith to a term of life imprisonment with the possibility of parole, with consecutive mandatory minimum terms of fifteen and three years on Counts 1 and 2 pursuant to HRS § 706-660.1.

Smith appealed, challenging his conviction exclusively on evidentiary grounds.[2]  Smith did not challenge the sufficiency of the Indictment or his sentencing pursuant to HRS § 706-660.1.

The Intermediate Court of Appeals (ICA) vacated Smith's conviction in part, concluding that the circuit court erred when it precluded Smith "from cross-examining Slavik regarding his arrest, pending felony charges, and bail status on June 23, 2018[,] in an unrelated case, for purposes of showing bias, interest, and motive to testify falsely."  The ICA determined that "there is a reasonable possibility that the Circuit Court's error contributed to Smith's convictions" as to Counts 1, 2, and 6.  However, because Smith stipulated that he

---

[2]     Smith's errors on appeal challenged: (1) the circuit court's prohibition of cross-examination of Slavik regarding felony charges that were pending against him and his bail status; (2) the circuit court's preventing Smith from calling a witness during his case-in-chief to establish an alleged conspiracy to hide evidence; (3) the circuit court's preventing Smith from eliciting hearsay evidence that neither Ballesteros nor Slavik had permission to pick fruit on the property; and (4) the circuit court's admission of testimony that Smith smoked methamphetamine the day before the shooting.

had previously been convicted of a felony offense and admitted at trial that he possessed a firearm that he had brought with him on June 23, 2018, the error was harmless beyond a reasonable doubt as to Counts 4 and 5.  As such, the ICA vacated the circuit court's Judgment of Conviction and Sentence only as to Counts 1, 2, and 6, and remanded the case for a new trial as to those counts.

On remand, Smith for the first time challenged the sufficiency of the Indictment, moving to strike the HRS § 706-660.1 sentencing enhancements included in Counts 1 and 2 of the Indictment.  Smith argued that the enhancements are elements, within the meaning of State v. Auld, 136 Hawaiʻi 244, 361 P.3d 471 (2015), and that, as such, the applicable state of mind must be pled under State v. Gonzalez, 128 Hawaiʻi 314, 324, 288 P.3d 788, 798 (2012), and State v. Nesmith, 127 Hawaiʻi 48, 53, 276 P.3d 617, 622 (2012).  Because the State failed to do so, Smith contended that sentencing enhancements must be struck from the Indictment.

The State opposed, arguing that "a mens rea is not necessary for purposes of enhancement under HRS § 706-660.1, and any such mens rea is necessarily included in the underlying offense the State seeks the enhancement on."  The State also argued due process was satisfied because it was an "absurdity" for "a defendant [to] claim[] not to know what he must meet at

trial when a case has already been tried once." Finally, the State noted that, when read in its entirety, the Indictment gave sufficient notice:

> Further, the Defendant was originally charged with knowingly carrying or intentionally using a firearm to commit the murder of Thomas Ballesteros and the attempted murder of Nikolaus Slavik in counts 6 and 7,[3] respectively. This assuredly put him on notice even if the Court does find a mens rea necessary for the enhancements, since the act giving rise to the enhancement under HRS §706-660.1 is mirrored in the charge of the HRS § 134-21(a), though counts 6 and 7 include state of mind language.

---

[3]     Counts 6 and 7 provided:

COUNT 6 (C18017852/KN)

> On or about the 23rd day of June, 2018, in the County and State of Hawaiʻi, BRIAN LEE SMITH knowingly carried on his person or had within his immediate control or intentionally used or threatened to use a firearm while engaged in the commission of a separate felony, Murder in the Second Degree of THOMAS BALLESTEROS, JR., or any included felony offense, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of Section 134-21(a), Hawaiʻi Revised Statutes, as amended.

COUNT 7 (C18017853/KN)

> On or about the 23rd day of June, 2018, in the County and State of Hawaiʻi, BRIAN LEE SMITH knowingly carried on his person or had within his immediate control or intentionally used or threatened to use a firearm while engaged in the commission of a separate felony, Attempted Murder in the Second Degree of NIKOLAUS SLAVIK, or any included felony offense, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of Section 134-21(a), Hawaiʻi Revised Statutes, as amended.

(Emphasis added.)

The circuit court agreed with Smith, concluding that the sentencing enhancements were elements within the meaning of Apprendi v. New Jersey, 530 U.S. 466 (2000), Alleyne v. United States, 570 U.S. 99 (2013), and Auld, 136 Hawaiʻi 244, 361 P.3d 471. Because the state of mind required for these "elements" was not alleged in the Indictment, the circuit court concluded that "[Smith] has not received proper notice as to what the state of mind is for the elements of HRS § 706-660.1 for which [Smith] needs to defend himself against." On this basis, the circuit court entered its September 9, 2021 Order Granting Defendant's Motion to Strike HRS § 706-660.1 Enhancement For Counts 1 and 2 Indictment.

The State appealed, arguing primarily that no state of mind applied to sentencing enhancements under HRS § 706-660.1. First, the State asserted that a sentencing enhancement under HRS § 706-660.1 "is not charging an offense, and thus not subject to or governed by the provisions of HRS §§ 702-204 [(2014)], 702-205 [(2014)], 702-206 [(2014)], or 702-212 [(2014)]." Importantly, the State noted, HRS §§ 702-204 and -212 only apply to "offenses," whereas HRS § 706-660.1 is a sentencing enhancement. Accordingly, the State reasoned, there was no statutory authority to import a state of mind where the statute on its face omits one.

9

The State also argued that our caselaw did not require a different outcome.  State contended that its position was consistent with our holding in State v. Wagner, 139 Hawaiʻi 475, 394 P.3d 705 (2017), that a sentencing enhancement factor is not an element of an offense.  Auld had no application, the State reasoned, because Auld only held that due process required the State allege predicate aggravating facts in the charging instrument and that a jury, not a judge, must determine if they are proven beyond a reasonable doubt.  Further, the State asserted that Gonzalez and State v. Wheeler, 121 Hawaiʻi 383, 219 P.3d 1170 (2009), were inapposite because those cases addressed the sufficiency of a charged offense, not a sentencing enhancement.  Additionally, the State noted that its position was consistent with federal caselaw, which has continued to impose strict liability in firearm possession cases in the wake of Apprendi and Alleyne.

Finally, the State argued that the circuit court abused its discretion in striking the charges because it "amounts to a dismissal under the circumstances, given the procedural history of the case, . . . [and] would leave the State without remedy."  No further clarification was given.

Smith countered that "if the State seeks enhanced penalties under HRS § 706-660.1, . . . the State must also allege and prove the applicable mens rea for those elements

10

under HRS § 702-204 and to satisfy due process." First, Smith argued that some state of mind applies for the three factual scenarios contemplated under HRS § 706-660.1. Because HRS § 706-660.1 can be satisfied through either "threatened use" or "use of a firearm," Smith argues that such acts must be proven to be <u>knowing</u> to meet the requisite state of mind. For mere "possession," however, Smith argued the State was required to meet a two-prong analysis under HRS § 702-202 (2014) to prove <u>knowing</u> possession of an object with <u>reckless</u> disregard that it is a firearm.[4] Second, Smith rejected the State's argument that it "is not charging an offense," contending that the aggravating circumstances must be alleged because they are "elements" within the meaning of <u>Auld</u> and <u>Alleyne</u>. Finally, Smith argued that if the aggravating circumstances do contain a state of mind, "due process demands the mens rea be alleged." (Citing <u>Gonzalez</u>, 128 Hawaiʻi at 324, 288 P.3d at 798).

The ICA vacated the circuit court's order granting the motion to strike. The ICA held that "the sentencing enhancement factor under HRS § 706-660.1 is not an element of an offense that requires a state of mind" and therefore "a state of mind

---

[4] HRS § 702-202, "Voluntary act includes possession," provides that "[p]ossession is a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control of it for a sufficient period to have been able to terminate the defendant's possession."

for the HRS § 706-660.1 enhancement was not required to be pled in the Indictment." The ICA explained that a sentencing enhancement is not an element of an underlying offense, because it "only applies post-conviction, after the defendant 'is convicted of a felony[,]' meaning the elements of the predicate offenses are already proven." (Quoting HRS § 706-660.1(a)) (relying on Wagner, 139 Hawaiʻi at 480-85, 394 P.3d at 710-15). The ICA distinguished Auld from the instant case, explaining:

> [R]eliance on Auld is misplaced because Auld did not hold that sentencing enhancement factors were "elements" within the meaning of HRS § 702-204. Rather, Auld simply required the facts supporting the enhancement to be alleged in the charging document and submitted to the jury. See 136 Hawaiʻi at 247-48, 257, 361 P.3d 474-75, 484.

Smith sought certiorari review, which we granted. He raises a single question: "Did the Intermediate Court of Appeals gravely err when it ruled that a sentencing enhancement factor under HRS § 706-660.1 is not an element of an offense that requires a state of mind and that that state of mind be alleged in an Indictment?"

### III. STANDARD OF REVIEW

"Whether a charge sets forth all the essential elements of a charged offense is a question of law, which this court reviews under the de novo, or right/wrong, standard." State v. Kauhane, 145 Hawaiʻi 362, 369, 452 P.3d 359, 366 (2019) (quoting Wheeler, 121 Hawaiʻi at 390, 219 P.3d at 1177) (brackets omitted).

12

## IV.  DISCUSSION

It is well settled that "[a] criminal charge serves multiple purposes" and implicates a criminal defendant's rights under article I, sections 5, 10, and 14 of the Hawaiʻi Constitution.  Nesmith, 127 Hawaiʻi at 52, 276 P.3d at 621.  One of those purposes is to "inform[] the accused 'fully' of the nature and cause of the accusation against him or her, and sufficiently appris[e] the defendant of what he or she must be prepared to meet to defend against the charges."  Id. at 66, 276 P.3d at 635 (Acoba, J., concurring and dissenting) (quoted in State v. Codiamat, 131 Hawaiʻi 220, 223, 317 P.3d 664, 667 (2013) (brackets in original)).  To give effect to that purpose, "[t]he accusation must sufficiently allege all of the essential elements of the offense charged. . . .  [T]he omission of an essential element of the crime charged is a defect in substance rather than of form."  State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977) (citations omitted).  "[A] charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process."  Nesmith, 127 Hawaiʻi at 52, 276 P.3d at 621 (quoting State v. Mita, 124 Hawaiʻi 385, 390, 245 P.3d 458, 463 (2010)).

13

To obtain a conviction, the State bears a statutorily defined burden of proof and persuasion that is provided for in HRS § 701-114 (2014), "Proof beyond a reasonable doubt":

>      (1)    Except as otherwise provided in section 701-115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
>
> >      (a)    Each element of the offense;
> >
> >      (b)    The state of mind required to establish each element of the offense;
> >
> >      (c)    Facts establishing jurisdiction;
> >
> >      (d)    Facts establishing venue; and
> >
> >      (e)    Facts establishing that the offense was committed within the time period specified in section 701-108.
>
>      (2)    In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.

The "elements of an offense," within the meaning of the Hawaiʻi Penal Code, are defined in HRS § 702-205, which provides:

> The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
>
> >      (a)    Are specified by the definition of the offense, and
> >
> >      (b)    Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

"When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."  HRS § 702-204.

14

Although we have in the past "characteriz[ed] mens rea as an 'element' of the offense," "[g]iven our statutory framework, it seems clear that mens rea is not an 'element of an offense' under HRS § 702-205."  Nesmith, 127 Hawaiʻi at 55, 276 P.3d at 624.  Nevertheless, this court has explained that "'state of mind requirements, though not an element of an offense[,]' were required to be included in the charges against the defendants in order 'to alert the defendants of precisely what they needed to defend against to avoid a conviction.'"  Gonzalez, 128 Hawaiʻi at 324, 288 P.3d at 798 (quoting Nesmith, 127 Hawaiʻi at 56, 276 P.3d at 625).

It is undisputed that Counts 1 and 2 of the Indictment do not provide a state of mind for the HRS § 706-660.1 sentencing enhancements.  Smith argues that the Indictment was defective as to Counts 1 and 2 because the state of mind is required either as an "element" under HRS § 702-205 through Auld, or by due process under Nesmith and Gonzalez.  As discussed below, we hold that, consistent with our caselaw, a sentencing enhancement factor is not an element of an underlying offense and the omission of its applicable state of mind from a charging instrument does not violate due process under the Hawaiʻi Constitution.

15

**A.    Sentence Enhancements Are Not "Elements" Within the Meaning of the Hawai'i Penal Code**

   **1.    Under <u>Wagner</u>, a sentencing enhancement factor is not an "element" of an underlying offense**

Our opinion in <u>Wagner</u> is dispositive as to whether a sentencing enhancement factor is an element of an underlying offense for purposes of the Hawai'i Penal Code.  In <u>Wagner</u>, we addressed whether the circuit court erred when it put the defendant's prior conviction before the jury as an element of the offense in a drug trafficking case, where the defendant had stipulated to that prior conviction.[5]  The ICA affirmed the

_____

   [5]    In addition to two possession charges, the <u>Wagner</u> defendant was convicted of Methamphetamine Trafficking in the First Degree, in violation of HRS § 712-1240.7(1)(a) (Supp. 2006), for possessing an ounce or more of methamphetamine with a prior methamphetamine trafficking conviction.  <u>Wagner</u>, 139 Hawai'i at 478, 394 P.3d at 708.  At the time, HRS § 712-1240.7 provided in relevant part:

> (1)    A person commits the offense of methamphetamine trafficking in the first degree if the person knowingly:
>
> (a)    Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing methamphetamine or any of its salts, isomers, and salts of isomers;
>
> . . . .
>
> (2)    Methamphetamine trafficking in the first degree is a class A felony for which the defendant shall be sentenced as provided in subsection (3).
>
> (3)    Notwithstanding sections 706-620(2), 706-640, 706-641, 706-659, 706-669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the first degree shall be sentenced to an indeterminate term of imprisonment of twenty years with a mandatory
>
> (continued . . .)

16

defendant's conviction, concluding that presenting the jury with the fact of the prior conviction was not an abuse of discretion "because the circuit court properly followed the procedure mandated where a defendant stipulates to a prior conviction for the same offense where such was an element of the current offense." Wagner, 139 Hawaiʻi at 479, 394 P.3d at 709 (internal quotation marks, brackets, and ellipsis omitted).  We disagreed and held that the "circuit court erred in construing [the defendant]'s prior methamphetamine conviction as an element of the offense, rather than a sentencing enhancement factor," and, as such, "unnecessarily subject[ed] [the defendant] to potential prejudice due to the jurors learning of his prior felony conviction." Id. at 476, 480, 394 P.3d at 706, 710.

In determining that a prior conviction is a sentencing enhancement factor and not an element of the underlying offense, we explained,

> The legislature has the ability to make a defendant's prior conviction an attendant circumstance, and

---

minimum term of imprisonment of not less than two years and not greater than eight years and a fine not to exceed $20,000,000; provided that:

(a)   If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712-1240.8, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than thirteen years, four months[.]

17

accordingly, an element of the offense. See, e.g., HRS § 291-4.4 (Supp. 2000) (repealed 2000). One way for the legislature to indicate that intent is to include the requirement of a prior conviction in the same portions of the statute that define the required conduct and results of conduct to commit the offense.

Id. at 480-81, 394 P.3d at 710-11 (footnote omitted).

Thus, we looked to the (1) plain language, (2) structure, and (3) legislative history of the statute; we also considered (4) due process notice concerns raised by construing the subsection as a sentencing factor and not an element. Id. at 481-84, 394 P.3d at 711-14. First, reviewing the plain language of the statute, we found nothing to suggest that a prior conviction was an element of the offense. Id. at 481, 394 P.3d at 711. Second, we noted that the provisions establishing the prohibited conduct made no mention of prior convictions and were separate from the subsection that governed the defendant's sentencing, suggesting that a prior conviction was not an element of the offense. Id. at 482, 394 P.3d at 712. Third, we concluded that "nothing in [the] legislative history indicate[d] that the drafters intended for a defendant's prior conviction to be construed as an element of the offense." Id. Fourth, we explained that where a prior conviction is so enmeshed or intrinsic to the offense, such as where the offense involves a hierarchy of misdemeanors and felonies, due process concerns would preclude concluding the prior conviction is not an element because, without it, a defendant would not be given notice of

18

the "class and grade of the offense charged . . . and whether the right to a jury has or has not attached." Id. at 483, 394 P.3d at 713 (discussing State v. Domingues, 106 Hawaiʻi 480, 107 P.3d 409 (2005) and State v. Kekuewa, 114 Hawaiʻi 411, 163 P.3d 1148 (2007)).[6]

Applying the Wagner analysis here, we come to the same conclusion and hold that possession of a firearm under HRS § 706-660.1(1) is not an element of an offense, but is instead a sentencing enhancement factor. First, we look at the plain language of the statute. The enhancement only applies once "[a] person [is] convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not." HRS § 706-660.1(1). This language does not indicate that possession, use, or threat of use of a firearm is an element of the underlying felony, suggesting that the foregoing is a sentencing enhancement factor, and not an element of the offense.

---

[6] Further, we explained in Wagner that the defendant "was on notice of the potential enhanced sentences, as the State asserted its intent to utilize [the defendant]'s prior conviction in its Amended Complaint." 139 Hawaiʻi at 484, 394 P.3d at 714.

19

Importantly, HRS § 706-660.1 does not establish an "offense" for possession of a firearm during the commission of a felony; that offense is provided for in HRS § 134-21, an offense under which Smith was charged in Counts 6 and 7.  Instead, HRS § 706-660.1 establishes factors for imposing a mandatory minimum term during sentencing, following a predicate conviction.  On this basis alone, HRS §§ 702-204 and -205 are inapplicable on their faces.

Second, we note that a sentencing enhancement under HRS § 706-660.1 is made pursuant to an entirely separate statute, and indeed chapter, of the Hawaiʻi Penal Code than the underlying felony offense.  HRS chapter 706, which governs the "Disposition of Convicted Defendants," includes four parts dealing with (I) pre-sentence investigations and reports, authorized dispositions, and classes of felonies; (II) probation; (III) fees, fine, and restitution; and (IV) imprisonment.  This statutory structure suggests that possession, use, or threat of use of a firearm is a sentencing enhancement factor, and not an element of the offense.

Third, nothing in the legislative history of HRS § 706-660.1 suggests that the legislature intended possession, use, or threat of use of a firearm in the commission of a separate felony to be considered an element of an underlying felony offense.  For example, the stated purpose of the

legislature in enacting Act 204 was to "discourag[e] the use of firearms [through] stronger and more certain penalties." 1976 Haw. Sess. Laws Act 204 § 1 at 493; see also Conf. Comm. Rep. No. 34-76, in 1976 Senate Journal, at 883 ("Your Committee intends to require the court, in the cases of felonies where a firearm was used, to impose a mandatory term of imprisonment. . . . At the present time, your Committee feels that there is a need to re-examine the methods with which to discourage the use of firearms and institute strong penalties for persons convicted of such criminal activities.").

Further, when the legislature amended the statute in 1987 through Act 260 to allow a mandatory minimum sentence to be imposed where the defendant possessed, but did not use or threaten to use a firearm in the commission of a felony,[7] Conference Committee Report No. 113 explained,

> Your Committee upon further consideration has amended this bill by reinserting the language of S.B. 847, S.D. 1. Your Committee believes that the provision allowing for judicial discretion in imposing a mandatory term will address the concern that under certain circumstances the mere possession of a firearm may not justify a mandatory prison term.

Conf. Comm. Rep. No. 113, in 1987 House Journal, at 1061-62.

---

[7] The House Judiciary Committee had amended Senate Bill 847, S.D. 1, to permit a mandatory minimum only when the criminal defendant possessed the firearm "and" used or threatened its use in the commission of a felony; however, the Conference Committee restored the "or" to permit sentencing enhancement for mere possession. Conf. Comm. Rep. No. 111, in 1987 Senate Journal, at 876; Conf. Comm. Rep. No. 113, 1987 House Journal, at 1061-62.

As the Conference Committee Report No. 113 clearly shows, the legislature viewed possession of a firearm as a factor for the trial court to consider at the time of sentencing, rather than as an element of an underlying crime. Once a criminal defendant was convicted of the underlying crime, the trial court would be empowered at its discretion under HRS § 706-660.1 to impose a mandatory minimum if warranted under the circumstances. Nothing in this legislative history evinces the legislature's intent for HRS § 706-660.1 to be anything other than a sentencing enhancement factor.

Fourth, construing possession, use, or threat of use of firearm as a sentencing enhancement factor does not pose the due process notice concerns present in Domingues and Kekuewa. Those cases involved a hierarchy of possible punishments, some of which entitled the defendant to a jury trial and some of which did not. Instead, the facts here are more like the facts in Wagner. In Wagner, as here, the statute in question "establishes felony offenses only, rather than a hierarchy of misdemeanors and felonies, and thus [the defendant] was entitled to a jury trial in any event." 139 Hawaiʻi at 484, 394 P.3d at 714. Moreover, just as we noted in Wagner, "[Smith] was on notice of the potential enhanced sentences, as the State asserted its intent to utilize [Smith]'s [possession of a firearm] in its [Indictment]." Id.

22

Based on the foregoing, we hold that a sentencing enhancement under HRS § 706-660.1 is not an element of an underlying offense within the meaning of HRS § 702-205.

2.   **Auld does not require a different outcome**

Smith argues that our opinion in Auld - decided two years before Wagner - is controlling.  Auld, however, is inapposite here.  Although Auld describes "any fact that increases the penalty of a crime" as an "element" within the meaning of Apprendi and Alleyne, see Auld, 136 Hawaiʻi at 247-48, 361 P.3d at 474-`75, that does not make it an "element of an offense" within the meaning of HRS § 702-205.

In Auld, we considered whether predicate prior convictions must be alleged in a charging instrument and proven to a jury beyond a reasonable doubt to receive a mandatory minimum term as a repeat offender.  Auld, 136 Hawaiʻi at 246-47, 361 P.3d at 473-74.  At sentencing, the circuit court granted the State's motion to impose a mandatory minimum term as a repeat offender, despite the charging instrument not alleging any prior convictions and the jury not finding beyond a reasonable doubt that the defendant had any predicate prior

convictions.[8]  Id. at 249, 361 P.3d at 476.  On appeal, the ICA affirmed the conviction and sentence, concluding that prior convictions fell within an exception to the general rule requiring aggravating facts be alleged and proved to the jury beyond a reasonable doubt.  Id. at 250, 361 P.3d at 477.  We

---

[8]      The Auld defendant was convicted of Robbery in the Second Degree and sentenced as a repeat offender under HRS § 706-606.5(1)(b)(iii) (2014). At the time, HRS § 706-606.5, "Sentencing of repeat offenders," provided in relevant part:

> (1)    Notwithstanding section 706–669 and any other law to the contrary, any person convicted of murder in the second degree, any class A felony, any class B felony, or any of the [enumerated] class C felonies . . . and who has a prior conviction or prior convictions for the following felonies, including an attempt to commit the same: murder, murder in the first or second degree, a class A felony, a class B felony, any of the class C felony offenses enumerated above, or any felony conviction of another jurisdiction, shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
>
> . . . .
>
> (b)    Two prior felony convictions:
>
> . . . .
>
> (iii) Where the instant conviction is for a class B felony—six years, eight months[.]
>
> . . . .
>
> (2)    Except as in subsection (3), a person shall not be sentenced to a mandatory minimum period of imprisonment under this section unless the instant felony offense was committed during such period as follows:
>
> . . . .
>
> (d)    Within ten years after a prior felony conviction where the prior felony conviction was for a class B felony[.]

held, in light of the U.S. Supreme Court's recent opinion in Alleyne, that, as a matter of state constitutional law, "proof of prior conviction must be found by a jury beyond a reasonable doubt" for purposes of establishing repeat offender status under HRS § 706-606.5. Auld, 136 Hawaiʻi at 255, 361 P.3d at 482. The reason, we explained, is that "repeat offender sentencing under HRS § 706-606.5 requires more than just a finding of the 'fact' of prior conviction."[9] Id. at 247, 361 P.3d at 474.

We also held that "the predicate prior conviction(s) must be alleged in the charging instrument." Id. at 255, 361 P.3d at 482. We went on to hold that "the State provides 'reasonable notice' to a defendant it seeks to sentence as a repeat offender when it alleges the defendant's predicate prior convictions in a charging instrument." Id. Notably, we did not state that details such as whether the defendant was represented by counsel or had validly waived counsel needed to be alleged in the charging instrument. See id. at 254-55, 361 P.3d at 481-82. We nevertheless affirmed the conviction, giving only prospective

_____

[9] In order for the State to establish that the "fact of prior conviction" for the repeat offender sentencing enhancement applied, we required the State to prove beyond a reasonable doubt that: (1) the conviction belongs to the defendant (2) for an enumerated offense (3) within the established time-frame and (4) that the defendant was represented by counsel or validly waived representation. Auld, 136 Hawaiʻi at 254, 361 P.3d at 481.

25

effect to our newly announced rule. Id. at 257, 361 P.3d at 484.

In Alleyne, the defendant was found beyond a reasonable doubt by a jury to have "used or carried," but not "brandished" a firearm in violation of a federal sentencing statute in a robbery case.[10] 570 U.S. at 104 (brackets omitted). The district court disagreed, finding by a preponderance of the evidence that the defendant had brandished the firearm. Id. Accordingly, the district court imposed a seven, rather than a five, year minimum term. Id. The United States Supreme Court reversed and held:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

570 U.S. at 103 (emphasis added) (citation omitted).

---

[10] The Alleyne defendant was sentenced under 18 U.S.C. § 924(c)(1)(A) (2006), which, at the time, provided in relevant part, that anyone who "uses or carries a firearm" in relation to a "crime of violence" "shall":

> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

26

As this discussion makes manifest, Auld addressed the narrow question of whether the "fact of a prior conviction" exception survived Alleyne.  Auld does not stand for the proposition that a sentencing enhancement factor is an "element of an offense" within the meaning of HRS § 702-205.  See Auld, 136 Hawaiʻi at 252, 361 P.3d at 479.  As the Auld court made clear, it used the term "element" only within the meaning of Apprendi and Alleyne, not the Hawaiʻi Penal Code.  See id. (quoting Alleyne, 570 U.S. at 103).  Accordingly, Smith's reliance on Auld and Alleyne is misplaced.  Although a sentencing enhancement factor is an "element" within the meaning of Apprendi, because it is a "fact that . . . increases the penalty for a crime," see Alleyne, 570 U.S. at 108, and therefore must be alleged in the Indictment and proven to the jury – as it was here – that does not make it an "element" of the underlying offense for purposes of HRS §§ 702-204 and -205.[11]

_____

[11]    In State v. Jess, 117 Hawaiʻi 381, 394, 184 P.3d 133, 146 (2008), we held that, "in light of Cunningham[ v. California, 549 U.S. 270 (2007)], except for prior convictions, multiple convictions, and admissions, 'any fact, however labeled, that serves as a basis for an extended term sentence must be proved beyond a reasonable doubt to the trier of fact.'"  (Quoting State v. Maugaotega (Maugaotega II), 115 Hawaiʻi 432, 447 & n.15, 168 P.3d 562, 577 & n.15 (2007).

Jess and Maugaotega II, on which this court relied in Jess, addressed whether the longtime distinction recognized by this court between intrinsic and extrinsic facts for purposes of conviction and sentencing survived the United States Supreme Court's opinion in Cunningham, which rejected the

(continued . . .)

**B.  Due Process Does Not Require a Charging Instrument to Allege a State of Mind for Sentencing Enhancement Factors**

We now turn to whether due process requires a charging instrument to allege a state of mind for a sentencing enhancement.  We conclude that it does not.

We held in Nesmith that a charge "must allege the requisite mens rea in order to fully define the offense in unmistakable terms readily comprehensible to persons of common understanding" and that a court errs in upholding the sufficiency of a charge on the basis that "mens rea may be inferred from the allegations."  127 Hawaiʻi at 50, 276 P.3d at 619.  Nesmith, which involved challenges to the sufficiency of an Operating a Vehicle Under the influence of an Intoxicant charge, consolidated two cases: the first defendant was charged under HRS § 291E-61(a)(1) (2007) while the second was charged under HRS § 291E-61(a)(3) (2007).  Id. at 51-52, 276 P.3d at 620-21.  The ICA concluded both charges were sufficient despite neither alleging a state of mind.  Id.  As to the latter case, we held that because "the omission of mens rea in an HRS § 291E-

---

intrinsic/extrinsic distinction.  Jess, 117 Hawaiʻi at 394-96, 184 P.3d at 146-48; Maugaotega II, 115 Hawaiʻi at 443-47, 168 P.3d at 573-77.  We concluded that it did not.  Jess, 117 Hawaiʻi at 394, 398, 184 P.3d at 146, 150; Maugaotega II, 115 Hawaiʻi at 447, 168 P.3d at 557.  Neither case involved – or even made mention of – mens rea or state of mind.  The intrinsic/extrinsic distinction addressed in Jess and Maugaotega II is not dispositive here.

61(a)(3) charge comports with the legislature's intent to make that type of . . . offense a strict liability offense . . . those charges were sufficient."[12]  Id. at 53, 276 P.3d at 622. However, as to the former case, we held that the charge was insufficient because it failed to state the requisite mens rea. We reasoned,

> in this case, the "intentional, knowing, or reckless" state of mind requirements, though not an "element of an offense" under HRS § 702-205, needed to be charged in an HRS § 291E-61(a)(1) Complaint to alert the defendants of precisely what they needed to defend against to avoid a conviction. A charge omitting the mens rea requirements would not alert the Petitioners that negligently operating a vehicle under the influence of an intoxicant in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty, for instance, is not an offense recognized under HRS § 291E-1(a)(1).  In short, mens rea must be alleged in an HRS § 291E-61(a)(1) charge.

Id. at 56, 276 P.3d at 625 (emphasis added); see also Gonzalez, 128 Hawaiʻi at 324, 288 P.3d at 798 (affirming the reasoning in Nesmith that state of mind is required "to alert the defendant[] of precisely what they need to defend against to avoid a conviction") (emphasis added); State v. Van Blyenburg, 152 Hawaiʻi 66, 74, 520 P.3d 264, 272 (2022) ("The purpose of these notice requirements is . . . to safeguard an accused's fundamental right to know what they must defend against to avoid conviction.").

---

[12]    In Nesmith, we did not require the charging instrument to affirmatively state that the offense was a strict liability offense for which no state of mind was required.

The reasoning in <u>Nesmith</u> and <u>Gonzalez</u> is inapplicable here. A sentencing enhancement factor only applies <u>after</u> a criminal defendant has been properly convicted of the underlying offense. Accordingly, notice of a requisite state of mind for a sentencing enhancement factor does nothing to help a criminal defendant understand how to avoid a conviction. Once a conviction has been obtained however, the defendant's due process interest in notice of the mens rea is reduced because the risk of an erroneous conviction has already passed. Not requiring a charging instrument to allege the state of mind for sentencing enhancement therefore does not violate <u>Nesmith</u> and <u>Gonzalez</u>. Consistent with this position, the jury here was instructed to answer the interrogatories only after finding Smith guilty on the underlying charges.

Accordingly, we hold that due process is satisfied when the charging instrument gives a criminal defendant notice that a sentence enhancement will be sought if convicted under the predicate offense and contains sufficient allegations to support its application. Here, the Indictment charged in both Counts 1 and 2 that "[Smith] is subject to sentencing in accordance with Section 706-660.1, Hawaiʻi Revised States, where he had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the felony offense, whether the firearm was loaded or not, and whether

operable or not."  Smith was given sufficient notice that he could be sentenced under HRS § 706-660.1 if he was convicted under either Count 1 or 2, such that due process was not offended by the State's failure to allege a state of mind for the sentencing enhancement.

Even if due process did require the Indictment to allege a state of mind for a sentencing enhancement factor under HRS § 706-660.1, due process would nevertheless be satisfied here because the record clearly established that, on remand, Smith had actual knowledge of the required state of mind for the sentencing enhancement to apply.  See State v. Israel, 78 Hawai'i 66, 71, 890 P.2d 303, 308 (1995) ("Furthermore, although it is true that if a defendant actually knows the charges against him or her, that defendant's constitutional right to be informed of the nature and cause of the accusation is satisfied, State v. Tuua, 3 Haw. App. 287, 292, 649 P.2d 1180, 1184 (1982), in order for a defendant's article I, section 14 right to be deemed satisfied on that basis, the record must clearly demonstrate the defendant's actual knowledge.").  Smith was already tried, convicted, and sentenced pursuant to the very charges he now challenges on remand.  Indeed, he participated in the first trial, where the jury was instructed:

> If you find the defendant Guilty as to Murder in the Second Degree or Manslaughter (Extreme Mental or Emotional

31

Disturbance), you shall answer the following interrogatory. Your decision must be unanimous.

Has the prosecution proved beyond a reasonable doubt that the defendant <u>intentionally</u> used and/or threatened to use a firearm, whether the firearm was loaded or unloaded, operable or inoperable, while engaged in the commission of the offense of Murder in the Second Degree or Manslaughter (Extreme Mental or Emotional Disturbance)?

(Emphasis added.)

Moreover, he did not suggest in his testimony there that he did not understand that he possessed a firearm or that he did not intend to use it; rather, he asserted that he acted in self-defense.

We cannot imagine what more notice or actual knowledge due process could require.  As we have explained,

The purpose of these notice requirements is not to facilitate obtuse technical arguments about what is and what is not an element of a crime, or about what complex statutory definitions should or should not be included in a charging document.  It is, rather, to safeguard an accused's fundamental right to know what they must defend against to avoid conviction.

Van Blyenburg, 152 Hawai'i at 74, 520 P.3d at 272; State v. Aquino, 154 Hawai'i 388, 395, 550 P.3d 1246, 1253 (2024) ("Notice plays the central role in evaluating challenges to an indictment, information, and complaint.").

Smith cannot reasonably contend now on remand that he does not "know what [he] must defend against to avoid conviction."  Van Blyenburg, 152 Hawai'i at 74, 520 P.3d at 272.  Due process is satisfied.

We note that this outcome is further supported by the Motta/Wells rule, which calls for a liberal construction of charging instruments when a criminal defendant brings an untimely challenge to the sufficiency of a charge. State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983); State v. Wells, 78 Hawaiʻi 373, 894 P.2d 70 (1995).

As we have explained,

> When a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet. State v. Mita, 124 Hawaiʻi 385, 390, 245 P.3d 458, 463 (2010); State v. Jendrusch, 58 Haw. 279, 283, 567 P.2d 1242, 1245 (1977). In other words, "[t]he relevant inquiry . . . is whether or not the charge [has] provided the accused with fair notice of the [offense's] essential elements." Mita, 124 Hawaiʻi at 390, 245 P.3d at 463 (citation omitted).
>
> However, when a defendant challenges the sufficiency of a charge for the first time on appeal, an appellate court will apply a more liberal standard of review, called the Motta/Wells rule. See, e.g., State v. Merino, 81 Hawaiʻi 198, 213, 915 P.2d 672, 687 (1996) (explaining that the Motta/Wells rule applies to challenges to oral charges, informations, and complaints raised for the first time on appeal). Under the Motta/Wells rule, charges challenged for the first time on appeal are presumed valid. Wheeler, 121 Hawaiʻi at 399-400, 219 P.3d at 1186-87. Accordingly, we will only vacate a defendant's conviction under this standard if the defendant can show: (1) that the charge cannot reasonably be construed to allege a crime; or (2) that the defendant was prejudiced. Motta, 66 Haw. at 91, 657 P.2d at 1020.

Kauhane, 145 Hawaiʻi at 369-70, 452 P.3d at 366-67.

Here, Smith challenges the sufficiency of the sentencing enhancements contained in Counts 1 and 2 of the Indictment for the first time on remand after appeal. The policy reasons that support applying the Motta/Wells rule to

appeals that raise untimely challenges to the sufficiency of charges are equally present here. See State v. Tran, 154 Hawai'i 211, 225, 549 P.3d 296, 310 (2024).

We conclude that both prongs of the Motta/Wells rule are satisfied here. Regarding the first prong, the state of mind for the sentencing enhancement alleged here is not an "element of an offense," as previously discussed. Regarding the second prong, Smith does not allege any prejudice from the alleged deficiency of the Indictment. See Kauhane at 373, 452 P.3d at 370.

Accordingly, the ICA correctly vacated the circuit court's order striking the sentencing enhancements from Counts 1 and 2.

## V.    CONCLUSION

For the foregoing reasons, we affirm the ICA's February 19, 2025 Judgment on Appeal and remand the case to the circuit court for further proceedings consistent with this opinion.

Andrew M. Kennedy                        /s/ Mark E. Recktenwald
(Jason R. Kwiat
on the briefs)                           /s/ Todd W. Eddins
for petitioner
                                         /s/ Lisa M. Ginoza
Charles E. Murray III
for respondent                           /s/ Vladimir P. Devens

